1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: RICHARD YIN-CHING HOUNG aka RICHARD HOUNG<br><br>Debtor.<br>_____<br><br>RICHARD YIN-CHING HOUNG aka RICHARD HOUNG,<br><br>        Appellant,<br><br>        vs.<br><br>TATUNG COMPANY, LTD., a Taiwan limited company,<br><br>        Appellee.<br>_____ | CASE NO. SACV 12-01341 MMM<br>BANKRUPTCY NO. BK 10-18712 ES<br><br><br>ORDER AFFIRMING DECISION OF THE BANKRUPTCY COURT |

Appellant Richard Houng ("Houng"), the debtor in a pending Chapter 7 bankruptcy case, appeals from the judgment of the bankruptcy court entered August 1, 2012.[1] Appellee Tatung Company, Ltd. ("Tatung") asserts that judgment was correctly entered.[2]

---

[1] Notice Regarding Appeal from Bankruptcy Court, Docket No. 1 (Aug. 20, 2012); Amended Notice of Appeal, Docket No. 3 (Aug. 20, 2012); Appellant's Opening Brief ("Appellant's Br."), Docket No. 13 (Oct. 17, 2012). See also Reply Brief ("Reply Br."), Docket No. 19 (Nov. 14, 2012).

[2] Appellee's Reply Brief ("Appellee's Br."), Docket No. 15 (Oct. 31, 2012).

# I. BACKGROUND

## A.   Factual Background

From September 29, 2003 to April 2, 2010, Houng was the Chief Executive Officer ("CEO") of Westinghouse Digital Electronics, LLC ("WDE").[3]  From 2007 to 2008, Tatung, a Taiwan-based assembler of LCD televisions, was party to a Product Supply Agreement ("PSA") with WDE, pursuant to which it was assemble and supply LCD televisions and digital photo frames.[4]  WDE was current on its obligations to Tatung under the PSA until late 2008, when it stopped making the required payments.[5]  In 2010, WDE ceased operations.[6]

## B.   The Arbitration

Tatung initiated an arbitration proceeding against WDE pursuant to the PSA on February 13, 2009, asserting various breach of contract claims.[7]  On January 11, 2010, Tatung amended its arbitration demand, adding Houng as a respondent.[8]  Tatung sought to impose liability on Houng as WDE's alter ego.

On May 7, 2010, the arbitrator issued a statement of decision on "Phase I" of the arbitration, finding WDE liable to Tatung for $21, 962,034.[9]  The arbitrator also made an interim finding that the principal amount of Houng's alter ego liability would be $17 million if Tatung

---

[3]Appellant's Br. at 5.

[4]Appellant's Br. at 6; Excerpts of Record ("E.R."), Docket No. 13 (Oct. 17, 2012), Exh. 6 (Westinghouse Digital Product Supply Agreement ("PSA")).

[5]*Id.*

[6]Appellant's Br. at 8.

[7]E.R., Exh. 28 (Findings of Fact and Conclusions of Law in Support of Summary Judgment on Tatung Company, LTD.'s First and Second Causes of Action Against Debtor and Defendant Richard Yin-Ching Houng aka Richard Houng ("Bankruptcy Order")), Findings of Fact ("FOF"), ¶ 4; PSA; Appellee's Br. at 5.

[8]E.R., Exh. 12 (Demand for Arbitration First Amended Attachment A).

[9]FOF, ¶ 5.

established Houng's alter ego liability in "Phase II" of the arbitration.[10]

On August 17, 2011, the arbitrator struck Houng's answer to Tatung's arbitration demand and entered terminating sanctions based on a finding that Houng had committed willful discovery violations.[11]   On November 10, 2011, the arbitrator issued an award against Houng and in favor of Tatung; he found Houng liable to Tatung as WDE's alter ego in the amount of $25,742,854 plus interest.[12]   The arbitrator made numerous factual findings to support the conclusion that Houng was liable as an alter ego and reach a reasoned award.[13]   Specifically, he found that as an officer and manager of WDE, Houng owed Tatung a fiduciary duty as a result of WDE's insolvency, and that he breached that duty by diverting $98.65 million of WDE's assets for his personal benefit.[14]   The arbitrator also found that Houng had committed actual fraud against Tatung.[15]

On December 12, 2012, the Orange County Superior Court confirmed the arbitration award in its entirety,[16] and entered a $27,601,208.48 judgment in favor of Tatung on its claim against Houng.[17]

### C.   The Bankruptcy Proceedings

On June 25, 2010, Houng filed a petition for relief under Chapter 11 of the United States

---

[10]*Id.*

[11]*Id.*, ¶ 7.

[12]E.R., Exh. 23 (Phase II Arbitration Award).

[13]*Id.*

[14]*Id.*; see also FOF, ¶ 13.

[15]*Id.*

[16]RJN, Exh. A ("Confirmation Order").

[17]The sum of $27,601,208.48 consisted of the arbitration award of $25,742,854 plus interest of $4,657.53 per day up to the date of entry of judgment, which totaled $1,858,354.48. (See *id.* at 2.)

Bankruptcy Code.[18]   On October 4, 2010, Tatung filed a complaint against Houng in the bankruptcy court.  The bankruptcy court granted Tatung's motion for relief from  the automatic stay under 11 U.S.C. § 362(d)(1) so that it could complete the arbitration proceeding on February 11, 2011.[19]   On July 29, 2011, the bankruptcy court converted the case to a Chapter 7 proceeding.[20]

Subsequently, Tatung filed first amended complaint, which sought an order that Houng's debt to it was nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and § 523(a)(6).[21]  On April 17, 2012, Tatung filed a motion for summary judgment on its first and second claims for relief.[22]  Houng opposed the motion.[23]  The bankruptcy court announced an intention to grant the motion on June 25, 2012.[24]

On August 1, 2012, the bankruptcy court entered its Findings of Fact and Conclusions of Law.[25]   The bankruptcy court adopted the following findings made by the arbitrator:

    a.    WDE was insolvent at all times during the course of the relationship between it and Tatung;

    b.    Houng, as an officer and manager of WDE, at all times owed a fiduciary

---

[18]E.R., Exh. 13 (Chapter 11 Voluntary Petition).

[19]E.R., Exh. 15 (Order Granting Motion for Relief from the Automatic Stay).

[20]E.R., Exh. 14 (Order Converting Case to Chapter 7).

[21]E.R., Exh. 16 (First Amended Complaint to Determine Debt is Not Dischargeable).

[22]E.R., Exh. 24 (Plaintiff Tatung Company, LTD.'s Motion for Summary Judgment and Summary Adjudication and Memorandum of Points and Authorities in Support thereof ("Tatung MSJ")).

[23]E.R., Exh. 25 (Debtor and Defendant Richard Houng's Opposition to Plaintiff Tatung Company, LTD's Motion for Summary Judgment and Summary Adjudication).

[24]E.R., Exh. 27 (Transcript of Hearing on Continued Hearing re: Plaintiff Tatung Company, LTD.'s Motion for Summary Judgment and Summary Adjudication dated June 25, 2012 ("MSJ Transcript")).

[25]Bankruptcy Order.

duty to Tatung during the course of its relationship with WDE, consistent with the California Trust Fund Doctrine;

c.   The fiduciary duty Houng owed to Tatung due to WDE's insolvency gave rise to an express trust under which Houng owed a duty, among other things, not to dissipate or divert the assets of WDE for his own benefit, or otherwise to engage in acts of self dealing;

d.   Houng breached his duty to Tatung by, among other things, diverting $98.65 million of WDE's assets for Houng's personal benefit without consideration;

The court found that the arbitrator's findings were issue preclusive,[26] and established each of the requisite elements of nondischargeability prescribed by §§ 523(a)(2)(A) and (a)(4).[27]  It therefore entered a judgment finding that Houng's $25,742,854.00 debt to Tatung was not dischargeable.[28]

### D.   The Bankruptcy Appeal

On January 24, 2013, the court heard argument on this appeal and took the matter under submission.[29]  The court also directed counsel to file supplemental briefs addressing whether state or federal law governed the preclusive effective, if any, of the arbitrator's ruling.[30]  The court noted that Ninth Circuit authority suggested an unconfirmed arbitration award did not have preclusive effect under the circumstances of this case.  Tatung represented that it had obtained a state court judgment confirming the arbitration award, but acknowledged that the order confirming the arbitration award was not in the record.   Tatung stated, therefore, that it would file a request for judicial notice of the confirmation order.

---

[26]*Id.*, FOF, ¶ 12; *id.*, FOF, ¶¶ 16-17; *id.*, Conclusions of Law ("COL"), ¶ 2;

[27]*Id.*, COL, ¶¶ 11-14.

[28]E.R., Exh. 29 (Judgment on Tatung Company, LTD.'s First and Second Causes of Action Against Debtor and Defendant Richard Yin-Ching Houng aka Richard Houng)

[29]Minutes of Argument on Bankruptcy Appeal, Docket No. 31 (Jan. 24, 2013).

[30]*Id.*

5

On January 31, 2013, Tatung filed a request for judicial notice of the Orange County Superior Court's confirmation of the arbitration award.[31]   The same day, Tatung filed a supplemental brief, arguing that California preclusion law applies.[32]  On February 1, 2013, Houng filed a notice of non-opposition to Tatung's supplemental brief.[33]

## II.  DISCUSSION

### A.    Standard of Review

The district court has jurisdiction to hear appeals from final judgments, orders or decrees of the bankruptcy court.  28 U.S.C. § 158(a).  When reviewing a decision of the bankruptcy court, a district court functions as an appellate court and applies the standard of review generally applied in the federal courts of appeal.  *In re Webb*, 954 F.2d 1102, 1103-04 (5th Cir. 1992); *In Re Adv. Packaging & Prods. Co.*, 426 B.R. 806, 816 (C.D. Cal. 2010) ("When reviewing a decision of the bankruptcy court, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal").  The court thus reviews the decision of the bankruptcy court to grant summary judgment *de novo*.  *In re Bakersfield Westar Ambulance, Inc.*, 123 F.3d 1243, 1245 (9th Cir.1997); *In re Fiene*, No. CV 10–09586–VAP, 2012 WL 3867337, *3 (C.D. Cal. Sept. 5, 2012).

The court also reviews *de novo* "the bankruptcy court's determination that issue preclusion is available; that is, that findings in one proceeding may preclude litigation of the same issues in another." *Fiene*,  2012 WL 3867337 at *3 (citing *Dias v. Elique*, 436 F.3d 1125, 1128 (9th Cir. 2006); *In re Lopez,* 367 B.R. 99, 103 (9th Cir. BAP 2007)).  Thus here, the court reviews *de*

---

[31]Appellee's Request for Judicial Notice of Confirmation of Arbitration Award, Docket No. 35 (Jan. 11, 2013), at 12 ("[T]his Court should consider the instant appeal on the merits in accordance with the parties' briefs and oral arguments at the Hearing").

[32]Appellee's Supplemental Brief Re Application of Federal Common Law ("Supp. Br."), Docket No. 36 (Jan. 31, 2013),

[33]Appellant's Non-Opposition to Appellee's Supplemental Brief re Application of Federal Common Law ("Non-Opp."), Docket No. 37 (Feb. 1, 2013).

*novo* whether the bankruptcy court properly concluded that the arbitration award had preclusive effect. *In re Khaligh*, 338 B.R. 817, 823 (9th Cir. BAP 2006). "Once it is determined that issue preclusion is available, however, the bankruptcy court's decision to apply it is discretionary, and will be reversed only if the bankruptcy court somehow abused its discretion." *Fiene*, 2012 WL 3867337 at *3 (citing *Dias*, 436 F.3d at 1128 (in turn citing *Miller v. Cnty. of Santa Cruz*, 39 F.3d 1030, 1032 (9th Cir. 1994)); see also *George v. City of Morro Bay* (*In re George*), 318 B.R. 729, 733 (9th Cir. BAP 2004), aff'd, 144 Fed. Appx. 636 (9th Cir. Aug. 10, 2005) (Unpub. Disp.), cert. denied, 546 U.S. 1094 (2006).

## B.    Whether the Arbitration Award Had Preclusive Effect

The parties appear to agree that the bankruptcy court should have given the arbitrator's award the preclusive effect it would have been accorded by a California state court.[34] As a result, they rely on California preclusion law in their briefs.[35]

California preclusion law would certainly apply if this were a diversity action, see *Jacobs v. CBS Broadcasting, Inc.*, 291 F.3d 1173, 1177 (9th Cir. 2002); *Priest v. Am. Smelting & Red Co.*, 409 F.2d 1229, 1231 (9th Cir. 1969), or if the arbitrator's award had been confirmed by a California state court, *Khaligh*, 338 B.R. at 828 n. 2; see also *Caldeira v. County of Kauai*, 866 F.2d 1175, 1178 (9th Cir. 1989).

This is not a diversity action, however. The bankruptcy court had jurisdiction over this action under 28 U.S.C. §§ 1334 and 157(b)(2)(I), not 28 U.S.C. § 1332. Tatung's complaint, moreover, asserted only federal claims under § 523(a). See *In re Carlson*, 464 Fed. Appx. 845, 849 (11th Cir. Mar. 30, 2012) (Unpub. Disp.) ("the district court correctly found that it had federal question jurisdiction over the non-dischargeability claims pursuant to 28 U.S.C. § 1331"); *In re Morrison*, 555 F.3d 473, 478 (5th Cir. 2009) ("Western Builders' claim for a declaration of nondischargeability is a core proceeding under 28 U.S.C. § 157 and 'is, without question, a

---

[34]See Appellant's Br. at 16; Appellee's Br. at 14.

[35]Appellant's Br. at 16-17; Appellee's Br. at 14 (citing *In re Khaligh*, 338 B.R. at 828 n. 10; *In re Ter Bush*, 273 B.R. 625, 628 (Bankr. S.D. Cal. 2002)). See also Tatung MSJ at 15-16.

constitutional and statutory federal question claim "arising under" the Bankruptcy Code, because the bankruptcy discharge is relief established by federal bankruptcy law and Section 523 expressly authorizes such a declaration regarding the effect of the federal bankruptcy discharge,'" quoting Ralph Brubaker, On the Nature of Federal Bankruptcy Jurisdiction: A General Statutory and Constitutional Theory, 41 WM. & MARY L. REV. 743, 911 (2000)); *Rodi v. Bombardier Capital*, *Inc.*, 163 B.R. 1017, 1020-21 (N.D. Ill. 1994) ("As courts have repeatedly held, nondischargeability due to fraud is a federal question, therefore a federal rather than a state definition of fraud is to be used" (quotation omitted)).

Title 28 U.S.C. § 1738 provides that "[t]he records and judicial proceedings of any court of any . . . state . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such state . . . from which they are taken." Under § 1738, an arbitration award confirmed by a California court is entitled to the same "full faith and credit" it would receive under California law. Section 1738 does not require that federal courts give res judicata or collateral estoppel effect to an unconfirmed arbitration award, however, because "[a]rbitration is not a 'judicial proceeding.'" *McDonald v. City of West Branch, Michigan*, 466 U.S. 284, 292 (1984); see also *Khaligh*, 338 B.R. at 824 n. 2 ("An unconfirmed arbitration award is not subject to the Full Faith and Credit Statute because arbitration is not a 'judicial proceeding' within the meaning of that statute); *Lum v. City and County of Honolulu,* 728 F.Supp. 1452, 1457 (D. Haw. 1989) ("an arbitrator's decision must be subject to some consideration of the merits by a court before it may be given 'full faith and credit' under 28 U.S.C. § 1738"); Charles A. Wright et al., FEDERAL PRACTICE & PROCEDURE, Jurisdiction, § 4475.1 n. 6 (2d ed. 2002) ("Arbitral awards, unreviewed by any court, are not such judgments as are entitled to recognition under the full faith and credit statute"). But see *In re Rosendahl*, 307 B.R. 199, 208 (Bankr. D. Or. 2004) (giving an unconfirmed arbitration award the "full faith and credit" it would receive under California law for purposes of issue preclusion);

1  *In re Marx*, 171 B.R. 218, 221-22 (Bankr. N.D. Tex. 1994) (same).[36]

2        The arbitrator's award had not yet been confirmed by a California court at the time the

3  bankruptcy court issued an order adopting the arbitrator's findings.  Because § 1738 did not apply,

4  any rule of preclusion applicable at the time of the bankruptcy court's decision would necessarily

5  have been judicially fashioned.  *McDonald*, 466 U.S. at 288; see also *Khaligh*, 338 B.R. at 824

6  n. 2; Wright et al., FEDERAL PRACTICE & PROCEDURE, Jurisdiction, § 4475.1 n. 6.  Stated

7  differently, because § 1738 did not apply, and the case involved claims Tatung asserted under

8  federal bankruptcy law, federal common law determined the preclusive effect of the arbitrator's

9  award.  *Caldeira*, 866 F.2d at 1178 n. 2.  "The federal courts have frequently fashioned federal

10 common law rules of preclusion where § 1738 does not apply."  *Id.*; see also *Roderick v. Mazzetti*

11 *& Associates, Inc.*, No. C 04-2436 MHP, 2005 WL 3797122, *3 n. 1 (N.D. Cal. Oct. 27, 2005)

12 ("Since this court has jurisdiction over the current matter because of the presence of a federal

13 question and not diversity, federal preclusion law applies").  Cf. *In re Drexel Burnham Lambert*

14 *Group, Inc.*,  161 B.R. 902, 906 (S.D.N.Y. 1993) ("The preclusive effect of an arbitration

15 [a]ward depends on the basis of the federal court's subject matter jurisdiction.  In the instant case,

16 petitioners' claims are founded on alleged violations of federal securities laws, and the parties

17 agree that federal law determines the preclusive effect to be given to the arbitration [a]ward");

18 *Novinger Group, Inc. v. Hartford Life & Annuity Ins. Co.*, No. 1:06-CV-0188, 2008 WL

19 5378288, *11 n. 15 (M.D. Pa. Dec. 23, 2008) (noting that district courts in the Third Circuit have

20 applied federal preclusion law to unconfirmed arbitration awards in cases where they have federal

21 question jurisdiction).

22        The Supreme Court and Ninth Circuit have consistently held that, under federal law, an

23

24        [36]In support of its conclusion that the unconfirmed arbitration award should be given issue
25 preclusive effect under California law, the *Rosendahl* court relied on *In re Baldwin*, 249 F.3d 912,
   917 (9th Cir. 2001).  There, however, the bankruptcy court gave preclusive effect to a state court
26 default judgment, not an unconfirmed arbitration award.  Similarly, the *Marx* court relied on *In
   re Limbaugh,* 155 B.R. 952, 961 (Bankr. N.D. Tex. 1993), which held that a state court default
27 judgment was issue preclusive.  The prior proceeding at issue here is an arbitration award, not a
28 state court default judgment.

1  unreviewed arbitration decision does not have preclusive effect in a federal court action.

2  *Caldeira*, 866 F.2d at 1178 ("[The Supreme Court] has consistently held that an unreviewed

3  arbitration decision does not preclude a federal court action," citing *McDonald*, 466 U.S. at

4  288-92; *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 742-45 (1981);

5  *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 56-60 (1974)); see also *id.* at 1178 n. 2 ("th[e]

6  common law rule of preclusion, however, has not been extended to arbitration hearings," citing

7  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 223 (1985)); *Employees of Butte, Anaconda*

8  *& Pacific Ry. Co. v. United States*, 938 F.2d 1009, 1015 n. 3 (9th Cir. 1991) ("Although

9  appellants argue that issue preclusion applies to unreviewed arbitrations, they do not cite any case

10  in support.  We have not located any case which holds that an arbitrator is bound by an earlier

11  arbitration decision that is not approved by a court or an administrative agency").  Cf. *McInnes*

12  *v. State of Cal.*, 943 F.2d 1088, 1093 (9th Cir. 1991) (holding that an unreviewed state

13  administrative proceeding did not have preclusive effect in the Title VII context, even if it would

14  have had issue preclusive effect in state court).  These authorities indicate that the bankruptcy

15  court erred in finding that the arbitrator's award had preclusive effect.  The court's research has

16  uncovered no binding precedent applying the federal common law of preclusion that would grant

17  preclusive effect to the unreviewed arbitration award in this case, and the bankruptcy court's

18  findings of fact and conclusions of law identify no such authority.

19        Some courts outside this jurisdiction have held that an unreviewed arbitration award can

20  have preclusive effect in a federal bankruptcy action.  See *In re Texaco*, 218 B.R. 1, 10 (Bankr.

21  S.D.N.Y. 1998) ("The doctrine of collateral estoppel applies to arbitration awards . . . including

22  final, although unconfirmed arbitration awards"); *In re Drexel Burnham*, 161 B.R. at 907 ("if the

23  other elements of collateral estoppel are met, the doctrine of collateral estoppel could be applied

24  to the arbitration [a]ward, notwithstanding the fact that it is unconfirmed"); see also *In re*

25  *Beckemeyer*, 222 B.R. 318, 321 (Bankr. W.D. Tenn. 1998) (following *Texaco* and *Marx* after

26

27

28

10

finding no Sixth Circuit guidance on the issue);[37] *In re Robinson*, 256 B.R. 482, 488 (Bankr. S.D. Ohio 2000) ("While the Sixth Circuit has not directly addressed this issue, it has shown deference to arbitration decisions. . . .  The Court finds the decisions applying the doctrines of res judicata and/or collateral estoppel to final but unconfirmed arbitration awards to be highly persuasive," citing *Val-U Const. Co. of S. D. v. Rosebud Sioux Tribe*, 146 F.3d 573, 581-82 (8th Cir. 1998); *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 267–68 (2d Cir. 1997); *In re Beckemeyer*, 22 B.R. at 321).[38]

These courts, however, did not discuss the Supreme Court or Ninth Circuit decisions cited in this order.  Most notably, they do not address *McDonald*, 466 U.S. 284.  The court therefore finds the decisions less persuasive than the decisions of courts that have declined to grant preclusive effect to unconfirmed arbitration awards after considering pertinent Ninth Circuit and Supreme Court authority.  See *In re Sandwich Islands Distilling Corp.*, No. 07–0102, 2009 WL 3806680, *4 (D. Haw. Nov. 12, 2009) (holding, in a bankruptcy proceeding, that a creditor's claim for monetary damages was not precluded by an arbitrator's decision awarding no damages, "because an unconfirmed arbitration award, such as the arbitrators' orders in this case, has no preclusive effect," citing *Caldeira*, 866 F.2d at 1178); see also *Lum*, 728 F.Supp at 1459 ("The Court's own research did not turn up a single case where preclusive effect was given to a . . . arbitration decision without [judicial] review encompassing some appraisal of the merits,"

---

[37]As noted, *Marx* erroneously held that an unreviewed arbitration award was entitled to "full faith and credit" under 28 U.S.C. § 1738.

[38]*Jacobson* was a case in which the court had diversity jurisdiction, so the Second Circuit applied New York rather than federal law to determine whether an unconfirmed arbitration award had preclusive effect.  As noted, there is no diversity jurisdiction here.  *Jacobson* is in tension, moreover, with *Leddy v. Standard Drywall, Inc.*, 875 F.2d 383, 385 (2d Cir. 1989).  In *Leddy*, the Second Circuit held that an unconfirmed arbitrator's award on a contract claim governed by New York law should not be given preclusive effect by a federal court adjudicating an ERISA claim, because it is the court judgment confirming an arbitration award that has preclusive effect. Nonetheless, *Jacobson* has been cited for the general proposition that an unconfirmed arbitration award should be given preclusive effect, even when New York law is not applicable. See, e.g., *In re Robinson*, 256 B.R. at 488.

discussing *McDonald*, 466 U.S. 284; *Alexander*, 415 U.S. at 56-58; *Caldeira*, 866 F.2d at 1176); see also *Shtab v. Greate Bay Hotel and Casino, Inc.*, 173 F.Supp.2d 255, 261-62 (D.N.J. 2001) (denying preclusive effect to an arbitration decision that was not judicially confirmed, and discussing *McDonald*, 466 U.S. at 292; *Barrentine*, 450 U.S. 728; *Alexander*, 415 U.S. at 57-58). As noted, the bankruptcy court granted summary judgment in Tatung's favor on the basis that the arbitrator's findings had issue preclusive effect. Because the arbitration award had not yet been reviewed and confirmed by a court at the bankruptcy court entered its order, its decision was in error.[39] See, e.g., *Caldeira*, 866 F.2d at 1178; *In re Sandwich Islands Distilling Corp.*, 2009 WL 3806680 at *4.

## C.   Whether it Was Reversible or Harmless Error for the Bankruptcy Court to Apply California Preclusion Law

In its supplemental brief, Tatung contends that the court can take judicial notice of the confirmation order for purposes of this appeal and "dispose [of] as moot the issue . . . whether the Bankruptcy Court erred in applying California preclusion law."[40] In support of this argument, it cites *Mozart Co. v. Mercedes-Benz of North America, Inc.*, 833 F.2d 1342, 1348 (9th Cir. 1987). In *Mozart*, the Ninth Circuit determined the preclusive effect of a decision on which the district court had relied by looking to proceedings that took place after the district court issued its decision. *Id.* ("The Fourth Circuit's decision significantly alters the focus of our concerns. We recognize that its decision possesses the required attributes of finality. We . . . are persuaded that the fact that this decision is subsequent in time to the district court's proceedings in the case before

---

[39]See FOF, ¶ 13; *id.*, COL, ¶¶ 11-12 (arbitrator's findings established each of the requisite elements of nondischargeability under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4)); see also MSJ Transcript at 5:24-6:7 ("I ultimately decided that issue preclusion does apply in this case from the standpoint of rendering a decision, it does make it at least shorter because I did not – I determined that I did not need to analyze each and every declaration, go through each and every evidentiary objection since the elements for 523(a)(2)(a) and 523(a)(4) have been sufficiently met, satisfied and supported by the arbitration award. Accordingly, the motion for summary judgment is granted in favor of the Plaintiff").

[40]*Id.* at 5.

us does not bar any preclusive effect that [it] might possess,'" citing *Los Angeles Unified School District v. Los Angeles Branch, NAACP*, 714 F.2d 935, 939-40 (9th Cir. 1983)).  The court can similarly take judicial notice of the confirmation order to determine that the arbitration award has preclusive effect;[41] the fact that the confirmation took place after proceedings in the bankruptcy court concluded does not bar any preclusive effect that the confirmed award might possess.  *Id.*

Tatung also argues that the bankruptcy court's erroneous reliance on California law in according the arbitrator's findings preclusive effect was "harmless error" because the arbitration award has since been confirmed by the Orange County Superior Court.[42]  Houng's notice of non-opposition states his agreement with Tatung's position, noting that it is appropriate for the court to rule on the merits of the appeal because the arbitration award has now been confirmed.[43]

The court will not reverse a bankruptcy court's decision on appeal on the basis of an error that does not affect the parties' substantial rights.  *In re Garvida*, 347 B.R. 796, 704 (9th Cir. BAP 2006) (citing 28 U.S.C. § 2111; FED.R.BANKR.PROC. 9005 (incorporating FED.R.CIV.PROC. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties"))).  Because

---

[41]The court may properly take judicial notice of court filings to determine whether claims before it are precluded.  See *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (taking judicial notice of court filings to determine what issues were actually litigated in a prior action for purposes of issue preclusion); *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of a state court decision and related briefs for purposes of determining a prior judgment's preclusive effect).

[42]Supp. Br. at 2-4.

[43] Houng could not, in any event, seek reversal of the bankruptcy court's order on the basis that it applied California preclusion law, since he urged the bankruptcy court to do so in the underlying proceeding.  (Appellant's Br. at 16 (applying California law).)  "[O]ne may not complain on review of errors below for which he is responsible."  *Deland v. Old Republic Life Ins. Co.*, 758 F.2d 1331, 1336 (9th Cir. 1985);  see also *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002) ("The invited error doctrine holds that 'one may not complain on review of errors below for which he is responsible' . . . and extends to choice of law questions," citing *Deland*, 758 F.2d at1336–37; *Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Ass'n*, 218 F.3d 1085, 1089 (9th Cir. 2000)).

the Orange County Superior Court has confirmed the arbitration award, both this court and the bankruptcy court must now give it the preclusive effect it would receive under California law. See 28 U.S.C. § 1738. As Tatung argues:

> "[R]eversal of the Judgment on the choice of law ground would be an idle gesture given the circumstances. On remand, the Bankruptcy Court would be expected to re-enter judgment in favor of Tatung, applying the very same California preclusion law it employed in entering the Judgment in the first instance, and the parties would undoubtedly find themselves back before this Court on appeal from that subsequent judgment."[44]

Stated differently, the bankruptcy court's premature decision to apply California preclusion law does not affect the substantial rights of the parties, because the degree to which the arbitration award determines those rights is now properly determined under California preclusion principles. *Khaligh*, 338 B.R. at 828 ("Since the confirmation of a private arbitration award by a state court has the status of a judgment, federal courts must, as a matter of full faith and credit, afford the confirmation the same preclusive consequences as would occur in state court. . . . [T]he confirmed arbitration award at issue in this appeal requires that, as a matter of full faith and credit, we focus on California preclusion law in the arbitration setting"). Consequently, the bankruptcy court's application of California law to determine the preclusive effect of the arbitration award four months before the Superior Court confirmed the award is therefore harmless. Cf. *Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128, 1134-35 (9th Cir. 2003) (applying harmless error analysis to a choice of law decision).

For both of the reasons stated, the court will not reverse the order of the bankruptcy court on the basis that it applied California law to determine the preclusive effect of the arbitration award.

---

[44]*Id.* at 6.

14

**D.    Whether the Arbitrator's Findings Were Sufficient to Support the Entry of Summary Judgment in Tatung's Favor**

**1.    Elements of Issue Preclusion**

Under California law, a party must prove the following elements to demonstrate that issue preclusion applies:

1) The issue sought to be precluded from relitigation must be identical to that decided in a former proceeding;

2) The issue must have been actually litigated in the former proceeding;

3) It must have been necessarily decided in the former proceeding;

4) The decision in the former proceeding must be final and on the merits; and

5) The party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*In re Cantrell*, 329 F.3d 1119, 1123 (9th Cir. 2003) (listing the requirements for the application of collateral estoppel under California law).

**2.    Tatung's First Cause of Action**

11 U.S.C. § 523(a)(2)(A) establishes an exception to discharge for any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.  11 U.S.C. § 523(a)(2)(A).   A creditor must prove five elements to prevail on a claim arising under § 523(a)(2)(A): (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of the statement or conduct; (3) intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. *American Express Travel Related Servs. Co. v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1125 (9th Cir. 1996); *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1086 (9th Cir. 1996).

Tatung's first amended complaint alleges that WDE, through Houng, fraudulently induced it to supply goods and services to WDE by misrepresenting WDE's intention to pay for the

15

goods.[45]  The bankruptcy court concluded that Tatung was entitled to summary judgment on its first cause of action under § 523(a)(2)(A).  It concluded that the arbitrator's findings, "including but not limited to[,] the finding of Houng's 'actual fraud' on Tatung," established each of the requisite elements of § 523(a)(2)(A), as alleged in Tatung's first cause of action.  The bankruptcy court stated that it adopted the arbitrator's findings that Houng committed actual fraud, and that the debt reflected by the arbitrator's award was caused by and would not exist but for his fraudulent act.  The court concluded, as a result, that the debt established by the arbitrator's award was nondischargeable under § 523(a)(2)(A) because it was "a debt for money, property, service, or an extension, renewal, or refinancing of credit, obtained by actual fraud."

Houng argues that the arbitrator's award is without preclusive effect as to Tatung's first cause of action because it does not include any findings related to a debt for money, property, services, or credit.  Houng contends there is nothing in the bankruptcy court's findings of fact and conclusions of law that identifies the basis upon which it determined that the arbitrator considered and found the facts alleged in Tatung's § 523(a)(2)(A) claim, because the arbitrator never made such findings.  Tatung argues that its only relationship to WDE was as a supplier of goods under the PSA, so any fraud necessarily involved inducing it to supply goods without intending to pay for them.  It asserts that its amended arbitration demand ("FAAA") put Houng on notice of the fact that it alleged he had used WDE to obtain products from Tatung through fraud and under false pretenses.

The bankruptcy court's order does not cite a specific finding by the arbitrator that Houng owed Tatung a debt for money, property, service, or an extension, renewal, or refinancing of credit that was obtained by actual fraud.[46]  The court's own review of the arbitrator's factual

---

[45]FAC, ¶¶ 28-29; *id.*, ¶ 32.

[46]At oral argument, Tatung asserted that § 532(a)(2) applies to any case that involves a debt obtained by fraud, whether or not the debt is for "money, property, services, or an extension, renewal, or refinancing of credit . . . obtained by . . . fraud."  Tatung's argument would require that the court ignore the plain wording of the statute.  Tatung cites *Muegler v. Bening*, 413 F.3d 980, 983-84 (9th Cir. 2005), and *In re Spilsbury*, No. 11-03565-MM7, 2011 Bankr. LEXIS 2390

findings, moreover, indicates that the award did not decide all of the requisite elements of the § 523(a)(2)(A) claim asserted by Tatung in its first amended complaint. The arbitrator did not identify a specific misrepresentation, omission, or fraudulent act by Houng concerning his intention to pay Tatung for goods supplied under the PSA.[47] Consequently, the arbitrator never decided that Houng knew of the falsity or deceptiveness of the misrepresentation, omission, or conduct, or that Tatung justifiably relied on the misrepresentation, omission, or conduct to its detriment. See *In re Hashemi*, 104 F.3d at 1125; *In re Eashai*, 87 F.3d at 1086. The arbitrator did find that Houng presented financial statements documenting nonexistent transactions that were

---

(S.D. Cal. June 15, 2011), as support for its argument that § 532(a)(2) applies whenever there is a finding of fraud. Neither case negates § 532(a)(2)'s requirement that the fraud concern a debt for "money, property, services, or an extension, renewal, or refinancing of credit," however. *Muegler* simply held that a debt can properly be found to be non-dischargeable under § 523(a)(2)(A) even if the debtor never obtained any actual benefit from the fraud. 413 F.3d at 983-84. *Spilsbury* held that a default judgment against the debtor for fraud entered by a state court was non-dischargeable under § 523(a)(2)(A). In reaching this conclusion, the court noted that the state court complaint alleged that the debtor had engaged in fraudulent conduct by promising to pay for or return certain computer equipment when it had no intention of doing so; that the plaintiff would not have consented to the contract to provide the computers had it known of the debtor's intention not to perform; and that those allegations were established as true by the default judgment order. 2011 Bankr. LEXIS 2390 at *2-3. *Spilsbury* is inapposite; in this case, the arbitrator set forth specific factual findings in the arbitration award; he did not adopt as true all of the allegations in Tatung's arbitration demand. Unlike the facts established by the default judgment order in *Spilsbury*, moreover, the arbitrator's findings here did not include the fact that the debtor (Houng) fraudulently promised to pay for goods when he had no intention of doing so. The undisputed facts showed, rather, that WDE paid for goods under the PSA until late 2008, suggesting that WDE did intend to pay for the goods when it promised to do so by entering into the PSA.

[47]At oral argument, Tatung asserted that it would not have entered into the PSA if it had known the true financial condition of WDE, i.e., that it was insolvent. The arbitrator found that Houng intentionally maintained WDE as an insolvent entity to avoid paying for goods whenever he chose to do so. The arbitrator did not, however, find that Tatung relied on any fraudulent misrepresentation or omission concerning WDE's solvency when it entered into the PSA. Even had the arbitrator made such a finding, moreover, it would not be grounds for concluding that the debt was non-dischargeable under § 523(a)(2)(A), because the misrepresentation or omission would have been "a statement respecting the debtor's . . . financial condition." 11 U.S.C. § 523(a)(2)(A).

fraudulent as to anyone who reviewed and relied on them.[48]  He never found, however, that Tatung relied on a fraudulent financial statement, or that it was induced by any of the financial statements to supply Houng with goods.[49]

Tatung argues that the FAAA gave Houng "reasonable notice" that the alleged fraud encompassed the fraudulent use of WDE as a shell company to obtain products from it under false pretenses.  The court has reviewed the FAAA, however, and has not found a specific allegation that Houng misrepresented WDE's intention to pay for the goods supplied under the PSA.  Collateral estoppel applies only when an "identical" issue is decided in a prior proceeding.  Even if the FAAA had put Houng on notice that the arbitrator could find he defrauded Tatung by making misrepresentations concerning WDE's intention to pay to induce Tatung to supply goods to WDE, the arbitrator never actually made such a finding.  Consequently, the court cannot conclude that the issue was "decided," much less "necessarily decided," in the former proceeding. It finds, consequently, that the bankruptcy court erred in concluding that all elements of Tatung's § 523(a)(2)(A) claim were necessarily decided by the arbitration award.

### 3.    Tatung's Second Cause of Action

11 U.S.C. § 523(a)(4) creates an exception to discharge for debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).  Whether a debtor acted in a "fiduciary" capacity for purposes of § 523(a)(4) is a question of federal law.

---

[48]Phase II Award at 16-17.

[49]Although the arbitrator found that Houng engaged in fraudulent transfers and diversions of funds from WDE, that conduct occurred after the parties had entered into the PSA. (*Id.*)  As a result, the arbitrator's findings of fraudulent transactions do not establish that Tatung relied on Houng's statements or conduct when it agreed to enter into the PSA.  Thus, the arbitrator did not "necessarily decide" that Houng's debt for goods under the PSA was "obtained by" the acts of fraud found by the arbitrator.  (*Id.*)  Similarly, the arbitrator did not find that Tatung relied on Houng's statements, omissions or conduct in continuing to provide goods under the PSA.  It thus cannot be said that he "necessarily decided" such an issue, or concluded that Houng fraudulently obtained an "extension of credit" under the PSA.  Rather, to the extent they focus on fraud, the arbitrator's finding primarily concern fraudulent transfers – i.e., transfers made with intent to hinder, delay or defraud creditors.  (See Phase II Award at 11, 16-17.)

*Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934); *In re Hemmeter*, 242 F.3d 1186, 1189 (9th Cir. 2001). "The definition of defalcation includes both the misappropriation of trust funds or money held in any fiduciary capacity; and the failure to properly account for such funds." *In re Hemmeter*, 242 F.3d at 1190–91.

### a.   Whether the Bankruptcy Court Applied the Correct Law in Finding That Houng Owed Tatung a Fiduciary Duty

Only relationships arising from express or technical trusts qualify as fiduciary relationships under § 523(a)(4). *In re Lewis*, 97 F.3d 1182, 1185 (9th Cir. 1996). "The broad, general definition of 'fiduciary' is inapplicable in the dischargeability context. . . . Instead, the fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt." *Id.* Whether a fiduciary is the trustee of an express or technical trust depends on state law. See, e.g., *In re Baird*, 114 B.R. 198, 202 (9th Cir. BAP 1990). An express trust or technical trust can be imposed by virtue of common law. *In re Jacks*, 266 B.R. 728, 736 (9th Cir. BAP 2001) (citing *Lewis*, 97 F.3d at 1185-86)); see also *In re Abrams*, 229 B.R. 784, 790 n. 6 (9th Cir. BAP 1999) (holding that the "'express or technical trust' required for section 523(a)(4) liability can arise from a state's common law").

Citing *Jacks*, the bankruptcy court held that WDE's insolvency gave rise to an express trust under California law. *Jacks* held that the fiduciary relationship between an insolvent corporation's officers and directors and its creditors was a "sufficient trust relationship for the application of § 523(a)(4)," because the insolvency of a corporation creates an express trust under California's "trust fund doctrine." *Id.* at 736-37 (citing *Pepper v. Litton*, 308 U.S. 295, 306–07 (1939) (a director of an insolvent corporation is a fiduciary whose obligation "is designed for the protection of the entire community of interests in the corporation – creditors as well as stockholders"); *Saracco Tank & Welding Co., Ltd. v. Platz*, 65 Cal.App.2d 306, 315 (1944) ("all of the assets of a corporation, immediately on its becoming insolvent, become a trust fund for the benefit of

all of its creditors")).[50]

---

[50]In *Pacific Scene, Inc. v. Penasquitos, Inc.*, 46 Cal.3d 407, 413 (1988), the California Supreme Court held that by codifying "'detailed statutory remedies' against the shareholders of dissolved corporations, . . . the California legislature had 'occupied the field and precluded resort to dormant common law doctrines for the provision of extra-statutory relief.'" *In re Jacks*, 266 B.R. at 737. The *Jacks* court noted, however, that "that [although] California's Corporation[s] Code provides a remedy for an insolvent corporation's director's violations of fiduciary duties to creditors, . . . 'the common law is not repealed by implication or otherwise, if there is no repugnancy between it and the statute, and it does not appear that the legislature intended to cover the whole subject.'" *Id.* at 737. It therefore held that while California's corporate statutes modify remedies, they "do not eliminate the trust comprised of corporate assets that arises upon a corporation's insolvency." *Id.* (citing CAL. CORP. CODE §§ 166, 500, and 501).

The few state court decisions that have discussed California's "trust fund doctrine" following *Pacific Scene* support the *Jacks* panel's approach. In *Penasquitos, Inc. v. Superior Court*, 53 Cal.3d 1180 (1991), the California Supreme Court interpreted *Pacific Scene* as holding that "the Legislature had occupied the field of creditors' *remedies against the shareholders of dissolved corporations.*" *Id.* at 1193 (emphasis added). *Penasquitos* did not define the field preempted by California statute in broader terms and did not hold that *Pacific Scene* eliminated the California trust fund doctrine entirely. To the contrary, *Penasquitos* limited *Pacific Scene*'s holding to the specific question of when a creditor can sue the former shareholders of a dissolved corporation. See *id.* at 1193 ("Because *Pacific Scene* . . . was concerned only with actions against shareholders, not actions against dissolved corporations, . . . it is not controlling on the issue now before us"). In *Berg & Berg Enterprises, LLC v. Boyle*, 178 Cal.App.4th 1020 (2009), the California Court of Appeal acknowledged the continuing existence of the trust fund doctrine in the state. *Id.* at 1041; see also *In re Moniz*, No. 09–90802–E–7, 2011 WL 9189752, *3 (Bankr. E.D. Cal. Mar. 8, 2011) (in *Berg*, "the District Court of Appeal reaffirmed the trust fund doctrine in California," citing *Berg*, 178 Cal.App.4th at 1041). Federal courts have also continued to apply the trust fund doctrine as a principle of California law after *Pacific Scene*. See, e.g., *Scouler & Co., LLC v. Schwartz*, No. 11–cv–06377 NC, 2012 WL 1502762, *5 (N.D. Cal. Apr. 23, 2012) ("When a corporation becomes insolvent, California's trust fund doctrine imposes an additional, albeit limited, fiduciary duty on the corporation's directors"); *Dollar Tree Stores Inc. v. Toyama Partners LLC*, Nos. C 10–0325 SI, C 11–2696 SI, 2011 WL 3295420, *9 (N.D. Cal. Aug. 1, 2011).

The court concludes, therefore, that California's enactment of statutory remedies for creditors of dissolved corporations preempted only the common law outlining the remedies available to such creditors. It did not eliminate the trust fund doctrine relevant in assessing whether the director of an insolvent corporation breached a fiduciary duty owed to the creditors of that corporation, such that his debt is non-dischargeable under § 523(a)(4). This limited reading is consistent with the language of *Pacific Scene* itself. See *Pacific Scene*, 46 Cal.3d at 1189 ("For the reasons stated, we conclude that the Legislature has precluded the assertion of postdissolution claims against the former shareholders of a dissolved corporation under the equitable 'trust fund' theory. We emphasize, however, that this determination does not insulate

Houng does not dispute that the bankruptcy court correctly applied *Jacks*.  He argues, however, that *Jacks* is no longer good law, citing *In re Moeller*, 466 B.R. 525, 537-38 (Bankr. S.D. Cal. 2012).  In *Moeller*, the bankruptcy court held that the duty owed to creditors by officers or directors of an insolvent corporation does not support a § 523(a)(4) exception to discharge.  *Id.* The *Moeller* court recognized that its conclusion was directly contrary to *Jacks*.  It reasoned, however, that a subsequently-decided California Court of Appeal decision, *Berg & Berg Enterprises, LLC v. Boyle*, 178 Cal.App.4th 1020 (2009), showed that *Jacks* had been wrongly decided.

In *Berg*, the Court of Appeal held that "under the current state of California law, there is no broad, paramount fiduciary duty of due care or loyalty that directors of an insolvent corporation owe the corporation's creditors solely because of a state of insolvency. . . .  [T]he scope of any extra-contractual duty owed by corporate directors to the insolvent corporation's creditors is limited in California, consistently with the trust-fund doctrine, to the avoidance of actions that divert, dissipate, or unduly risk corporate assets that might otherwise be used to pay creditors claims."  *Id.* at 1041.  Relying on *Berg*, the *Moeller* court held that a trust arising from the insolvency of a corporation under the trust fund doctrine gives rise to "a trust *ex maleficio* or a resulting trust, not an express or technical trust," as required by § 523(a)(4).  466 B.R. at 534.

The *Moeller* court reasoned that a trust arising upon corporate insolvency "occurs in the

---

dissolving corporations or their shareholders from actions for the recovery of fraudulently transferred assets").  Accordingly, the court may properly refer to the trust fund doctrine to determine whether Houng breached any fiduciary duty he owed to Tatung.  See *CarrAmerica Realty Corp. v. nVidia Corp.*, Nos. C 05-00428 JW, 2006 WL 2868979, *5 n.1 (N.D. Cal. Sept. 29, 2006) ("[T]he *In re Jacks* Bankruptcy Appellate Panel commented that although 'California's Corporation Code provides a remedy for an insolvent corporation's director's violations of fiduciary duties to creditors  . . . the common law is not repealed by implication or otherwise, if there is no repugnancy between it and the statute, and it does not appear that the legislature intended to cover the whole subject.'  California's corporate statutes, while modifying remedies, do not eliminate the trust comprised of corporate assets that arises upon a corporation's insolvency.' . . .  Since CARR does not raise this claim in a statutory context, the Court does not consider its application, but rather, considers the common law application of CARR's claim to determine if there was a breach of a fiduciary duty for the purposes of this Order"), rev'd in part on other grounds, 302 Fed. Appx. 514 (9th Cir. Nov. 25, 2008) (Unpub. Disp.).

absence of an explicit declaration of trust or an actual conveyance of a trust res," so it is not an express trust.  *Id.* at 535 (citing *Bainbridge v. Stoner*, 16 Cal.2d 423, 428 (1940) ("To create an express trust there must be an explicit declaration of trust followed by an actual conveyance or transfer of property to the trustee")).  It further concluded that a trust arising upon corporate insolvency is not a technical trust, because "California courts . . . expressly hold that a technical trust is not one implied by contract," and "the corporate principal/creditor duty finds its origins in agency principles and initially arises from contract."  *Id.* at 36.  The court recognized that other jurisdictions "apply a broader definition of technical trusts and conclude that technical trusts are those created [by] common law or statute."  *Id.*  It held, however, that "there is no California statute that creates a fiduciary relationship between a corporate officer or director and its creditors."  *Id.*

Tatung argues, and the bankruptcy court concluded, that *Jacks* is still good law, notwithstanding *Moeller* and the cases it cites.  The court agrees.  Subsequent decisions of the Bankruptcy Appellate Panel ("BAP") have continued to rely on *Jacks* in holding that, under California law, an express trust arises in favor of creditors upon the insolvency of a corporation, and that such an express trust is sufficient for purposes of § 523(a)(4).  *In re Nelson*, No. CC-09-1016 PaRMo, 2009 Bankr. LEXIS 4543,*20-22 (9th Cir. BAP Aug. 27, 2009) (Unpub. Disp.); see also *In re Weinberg*, 410 B.R. 19, 23 (9th Cir. BAP 2009).

The reasoning set forth in *Moeller* does not persuade the court that it should depart from the rule set forth in *Jacks* and the BAP decisions that have subsequently cited and applied it.  As other courts have recognized in the context of applying § 523(a)(4), "the requirement of an 'express' or 'technical' trust is not absolute or formulaic."  *ATR-Kim Eng Financial Corp. v. Bonilla*, No. C 08-01062 WHA, 2008 WL 4414153, *5 (N.D. Cal. Jan. 13, 2008).  "Most courts today . . . recognize that the 'technical' or 'express' trust requirement" of § 523(a)(4) "is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law.  Thus, the trust obligations necessary under section 523(a)(4) can arise pursuant to a statute, common law or a formal trust agreement."  *Id.* (quoting *Bennett v. Bennett*, 989 F.2d 779, 784-85 (5th Cir. 1993)).

1    The *Moeller* court's conclusion that "there is no California statute that creates a fiduciary

2    relationship between a corporate officer or director and its creditors" does not demonstrate the

3    absence of a fiduciary relationship between Houng and Tatung for purposes of § 523(a)(4); this

4    is because "the 'express or technical trust' required for section 523(a)(4) liability can arise from

5    a state's common law[.]"  *In re Eberts*, No. CV 11–08827–MWF, 2013 WL 1248637, *5 (C.D.

6    Cal. Mar. 27, 2013) (citing *In re Abrams*, 229 B.R. at 790 n. 6).  see also *In re Lewis*, 97 F.3d

7    at 1185-86.

8           For example, in *Ragsdale v. Haller*, 780 F.2d 794 (9th Cir. 1986), the Ninth Circuit held

9    that a debtor's debt to his partner was non-dischargeable because under California common law,

10   all partners are trustees of the assets of the partnership, such that they are fiduciaries for purposes

11   of § 523(a)(4).  *Id.* at 796.  The Ninth Circuit did not conclude that there had been an "explicit

12   declaration of trust or an actual conveyance of a trust res" in *Ragsdale*.  It specifically noted, in

13   fact, that California statutes expressly recognized the existence of a trust relationship between

14   partners only in the trust *ex maleficio* context where a partner has derived profits for which he has

15   not accounted to the partnership.[51]  *Id.*  (citing CAL. CORP. CODE § 15021).  Nevertheless, it held

16

---

17   [51]The *Moeller* court held that the type of trust recognized in *Berg* – i.e., a trust that arises

18   as a result of actions that divert, dissipate, or unduly risk corporate assets that might otherwise be
     used to pay creditors – is a constructive trust – that is, a trust *ex maleficio*.  It reasoned that "the

19   *Berg* court describe[d] a duty owed at corporate insolvency that squarely matches the statutory

20   duty that the *Ragsdale* court found to be insufficient for section 523(a)(4) nondischargeability in
     the context of a partnership."  In *Ragsdale*, the court held that California Corporations Code §

21   15021 creates a trust *ex maleficio* that is "not included within the purview of § 523(a)(4)."  780
     F.2d at 796.  Prior to its repeal, § 15021 provided:

22
              "Every partner must account to the partnership for any benefit, and hold as trustee

23            for it any profits derived by him without the consent of the other partners from any
              transaction connected with the formation, conduct, or liquidation of the partnership

24            or from any use by him of its property."  CAL. CORP. CODE § 15021.

25   "[U]nder this statute, the trust arises only when the partner derives profits without consent of the
     partnership."  *Ragsdale*, 780 F.2d at 796.  Stated differently, the trust arises only when a

26   misappropriation occurs.  The *Moeller* court reasoned that the trust fund doctrine similarly creates
     a trust that arises only when there has been a misappropriation.  466 B.R. at 537.  The fiduciary

27   duties described in *Berg*, though limited, arise when the corporation becomes "actually insolvent,"
     however, not when a misappropriation occurs.  *Berg*, 178 Cal.App.4th at 1041; see also *Saracco*

28

23

that the debtor was a fiduciary within the meaning of § 523(a)(4) because "California courts . . . [had] raised the duties of partners beyond those required by the literal wording of [the California statute]." *Id.* (quoting *Leff v. Gunter*, 33 Cal.3d 508, 514 (1983)). *Moeller* is thus at odds with Ninth Circuit authority, insofar as *Moeller* relied on the absence of an explicit declaration of trust, conveyance of a trust res, or statute creating a trust as the basis for holding that neither an express nor a technical trust sufficient to satisfy § 523(a)(4) exists as a result of the fiduciary relationship created by the trust fund doctrine.

Like *Ragsdale*, the *Jacks* court relied on California common law (specifically, the trust fund doctrine) to find the existence of a trust relationship sufficient to warrant application of § 523(a)(4). *Berg* does not demonstrate that this reliance is erroneous as a matter of California law. As the *Moeller* court recognized, "the *Berg* court was answering a question far removed from a bankruptcy court's need for categorization of a trust in a section 523(a)(4) context. It thus had no need to discuss whether a trust actually arises at corporate insolvency or upon post-insolvency misappropriation or to label any such trust as express, technical, or other." *Moeller,* 466 B.R. at 535. Nor did *Berg* overturn California's trust-fund doctrine. To the contrary, *Berg* "recognize[d] that [fiduciary] duties to creditors arise at corporate insolvency." See *id*. *Berg* simply held that the complaint in that case failed to allege a breach of the limited

---

*Tank*, 65 Cal.App.2d at 315 ("*When a corporation becomes insolvent* its assets are held in trust for the benefit of the stockholders and creditors," citing 15A FLETCHER'S CYC. OF CORP., PERM. ED. § 7369 (1938), at 59 ("The theory of the trust fund doctrine is that all of the assets of a corporation, *immediately on its becoming insolvent*, become a trust fund for the benefit of all of its creditors" (emphasis added))). The trust that arises under the trust fund doctrine is thus different from the trust relationship created by the statute referenced in *Ragsdale*, which requires that profits be "derived . . . without the consent" of the partnership before fiduciary duties arise. CAL. CORP. CODE § 15021. See also *In re Kallmeyer*, 242 B.R. 492 (9th Cir. BAP 1999) ("[O]nce NIM became insolvent and ceased doing business, the trust fund doctrine imposed a fiduciary duty upon Debtor to hold NIM's assets in trust for the benefit of its creditors and to distribute those assets equally. The fiduciary duty was imposed prior to any defalcation, and no personal liability arose until Debtor breached this fiduciary obligation. Because the fiduciary duty arose independently of any wrongdoing and existed prior to and without reference to it, we hold that the bankruptcy court properly concluded that the trust fund doctrine imposes a fiduciary obligation upon directors within the meaning of § 523(a)(4)").

24

fiduciary duties that arise under the trust-fund doctrine. 178 Cal.App.4th at 1042. Although *Berg* specified that the extra-contractual duty owed by corporate directors to an insolvent corporation's creditors is limited "to the avoidance of actions that divert, dissipate, or unduly risk corporate assets that might otherwise be used to pay creditors claims," it also noted that the rule it articulated was "consistent with the trust-fund doctrine." *Berg*, 178 Cal.App.4th at 1041. See also *Scouler & Co., LLC v. Schwartz*, No. 11–cv–06377 NC, 2012 WL 1502762, *5 (N.D. Cal. Apr. 23, 2012) ("When a corporation becomes insolvent, California's trust fund doctrine imposes an additional, albeit limited, fiduciary duty on the corporation's directors," citing *Berg*); *In re Moniz*, No. 09–90802–E–7, 2011 WL 9189752, *3 (Bankr. E.D. Cal. Mar. 8, 2011) (in *Berg*, "the District Court of Appeal reaffirmed the trust fund doctrine in California," citing *Berg*, 178 Cal.App.4th at 1041).

For all of the reasons stated, the court concludes that the California and Ninth Circuit law applied in *Jacks* is the law applicable to the case at hand. As a consequence, the court finds that the bankruptcy court properly applied *Jacks* to determine that Houng owed Tatung fiduciary duties that arose upon WDE's insolvency pursuant to California's "trust fund doctrine."[52]

---

[52]Tatung argues that *Moeller* articulates a rule limited to directors of insolvent corporations. It contends that Houng was the manager of an LLC, rather than the director of a corporation. Citing *McCarthy v. Nature's Wing Fin Design*, No. CC-10-1445-PaMkB, 2011 Bankr. LEXIS 4302, *2 (9th Cir. BAP Aug. 10, 2011) (Unpub. Disp.), Tatung contends it is well-established that LLC managers owe fiduciary duties of care and loyalty to the company, which run to the company's creditors during insolvency. In *McCarthy*, the Bankruptcy Appellate Panel observed that under California law, LLC managers owe the same fiduciary duties of care and loyalty to the company as those that are owed by a partner to a partnership and its partners. *Id.* at *26 (citing CAL. CORP. CODE § 17153 ("the fiduciary duties a manager owes to a limited liability company are those of a partner to a partnership and to the partners of the partner")). The *McCarthy* court held that § 17153 creates an express trust relationship between an LLC and its partners. *Id.* As noted, the Ninth Circuit has also held that partners owe each other fiduciary duties for purposes of § 523(a)(4). *Ragsdale*, 780 F.2d at 796-97.

*McCarthy* and *Ragsdale* do not demonstrate, however, that the duties that LLC partners or managers owe to each other or to the company extend to the LLC's creditors. Tatung cites no authority for the proposition that the duties owed by principals of an insolvent company to creditors under the trust fund doctrine are "coextensive" with the duties owed by a principal to the company and its shareholders outside insolvency. As noted, however, *Jacks* remains good

1

**b.      Whether the Arbitrator's Findings Were Preclusive**

2      In support of its second cause of action, Tatung alleged that WDE was insolvent as early

3  as 2007; that Houng owed it a fiduciary duty as the alter ego of WDE; and that Houng diverted

4  WDE assets through self-dealing and misappropriation of funds that should have been used to pay

5  Tatung, a legitimate creditor.[53]   The bankruptcy court concluded that Tatung was entitled to

6  summary judgment on its second cause of action under § 523(a)(4).   It found that the arbitrator's

7  findings, "including but not limited to the finding of Houng's 'actual fraud,' WDE's insolvency,

8  Houng's fiduciary duty to Tatung, and Houng's diversion of $98.65 million of WDE's assets for

9  his own personal benefit" established each of the requisite elements of § 523(a)(4).   The court

10  concluded, therefore, that the debt established by the arbitrator's award was non-dischargeable in

11  its entirety under § 523(a)(4) as "a debt for fraud and defalcation while acting in a fiduciary

12  capacity."

13      Houng argues that whether he breached any fiduciary duty owed Tatung as a result of

14  WDE's insolvency was not "necessarily" decided in the arbitration proceeding, and that the

15  arbitrator's findings on the issue were "superfluous and entirely unnecessary."   The FAAA

16  alleged, however, that Houng was WDE's alter ego, and the arbitrator stated that he findings

17  regarding breach of fiduciary duty and fraud were necessary not to explain why Houng was

18  ────────────────────

19  law, and the trust fund doctrine as applied in *Jacks* extends to LLCs.   See, e.g., *Dollar Tree*

20  *Stores Inc. v. Toyama Partners LLC*, Nos. C 10–0325 SI, C 11–2696 SI, 2011 WL 3295420, *7
   (N.D. Cal. Aug. 1, 2011); see also *JPMorgan Chase Bank v. KB Home*, 632 F.Supp.2d 1013,

21  1027 (D. Nev. 2009) ("Although limited liability companies differ from corporations, the same
   policies of protecting creditors of insolvent corporations are applicable to the creditors of insolvent

22  limited liability companies"); *In re McCook Metals*, 319 B.R. 570, 595 (Bankr. N.D. Ill. 2005)

23  ("[D]irectors of an insolvent corporation are trustees for its creditors. They owe to the
   corporation's creditors the same fiduciary duties in dealing with its property that an executor

24  would owe to creditors of a decedent's estate – they may not engage in self-dealing with, or make
   any personal profit from, the property that they administer.   These corporate law principles are

25  fully applicable to managers of insolvent limited liability companies").   Based on these authorities,
   the court need not decide whether the duties LLC partners or managers owe each other and/or the

26  company extend to the LLC's creditors to conclude the bankruptcy court correctly determined that

27  Houng owed Tatung fiduciary duties that arose upon WDE's insolvency.

28      [53]FAC, ¶¶ 36-39.

26

WDE's alter ego, but to describe how Houng's conduct harmed Tatung, and why it was appropriate to impose alter ego liability on Houng.[54]  CAL. CODE CIV. PROC. § 1283.4 (an arbitration award "shall include a determination of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy").   The arbitrator reasoned:

> "[E]vidence of fraud and breach of fiduciary duty is relevant to the alter ego
> liability of respondent Houng and necessary to the ultimate ruling on that liability
> for this reason: Houng could have been the alter ego of his various enterprises . . .
> without committing overt fraud or breaching a fiduciary duty to creditors such as
> Tatung, but he would not have caused them harm – damages – without committing
> those torts.   And this, to return to the language of the case law [on alter ego
> liability] is simply another way of describing the 'inequitable results' which the alter
> ego doctrine seeks to prevent."[55]

As the arbitrator correctly noted, one of the prerequisites to a finding of alter ego liability is that the corporate form must have been used to perpetrate a fraud or accomplish some other inequitable purpose.  *Neilson v . Union Bank of Cal., N.A .* , 290 F.Supp.2d 1101, 1116 (C.D. Cal. 2003) (citing *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal.App.4th 523, 538 (2000)).   The court concludes, therefore, that the arbitrator "necessarily decided" that Houng had committed fraud and breached his fiduciary duty to Tatung in the course of explaining why it was appropriate to impose alter ego liability on Houng.  See, e.g., *Schmidt v. County of Nevada*, 808 F.Supp.2d 1243, 1250 (E.D. Cal. 2011) (citing *Beechwood Restorative Care Center v. Leeds*, 436 F.3d 147, 153 (2d Cir. 2006) ("An issue is necessarily decided when two elements are satisfied: (1) the issue was actually decided; and (2) the determination of the issue was necessary to render a valid judgment on the merits of the underlying proceeding").

Houng asserts, however, that the arbitrator's findings are not preclusive because the FAAA

---

[54]Phase II Award at 5-7; *id.* at 16-17.

[55]*Id.* at 7.

never alleged that his defalcations occurred while WDE was insolvent.  The court's review of the FAAA confirms that it does not specifically assert that misappropriations occurred during WDE's insolvency.  Houng maintains, therefore, that whether he breached a fiduciary duty to Tatung as a result of WDE's insolvency was not actually litigated.  An issue is actually litigated when it is properly raised, by pleadings *or otherwise*, and is submitted for determination, and is determined. See, e.g., *Beckway v. DeShong*, 717 F.Supp.2d 908, 920 (N.D. Cal. 2010) (quoting *People v. Carter*, 36 Cal.4th 1215, 1240 (2005) (emphasis added)).

The Ninth Circuit has held that the actual litigation requirement is satisfied by a default judgment entered against a party for refusal to cooperate with discovery, if the party was accorded a full and fair opportunity to litigate the issue, but instead chose to defy court orders concerning discovery.  *In re Daily*, 47 F.3d 365, 368-69 (9th Cir. 1995).[56]  Here, Houng was accorded a full

---

[56]Houng does not dispute that the actual litigation requirement can be satisfied by a default judgment.  He argues, however, that the preclusive effect of a default judgment is strictly limited to the facts alleged in the complaint, citing *Cantrell v. Cantrell*, 329 F.3d 1119 (9th Cir. 2003); *Greenup v. Rodman*, 42 Cal.3d 822 (1986); *Lang v. Lang*, 182 Cal. 765 (1920); and *Four Star Electric, Inc. v. F & H Construction*, 7 Cal.App.4th 1375, 1382 (1992).  None of these cases addresses the preclusive effect of an arbitrator's finding of a fact that is not specifically alleged in the complaint.  Rather, the cases cited by Houng simply apply California Code of Civil Procedure § 580, which provides that "[t]he relief granted to the plaintiff" in a default judgment "cannot exceed that demanded in the complaint."  CAL. CODE CIV. PROC. § 580(a).  Houng conceded at oral argument that his counsel had "found no case" applying a similar rule in the arbitration context.  As the bankruptcy court correctly concluded, § 580 does not apply to arbitrations, and an arbitrator can properly find facts that are not specifically pleaded in the arbitration demand.  See *Grubb & Ellis Co. v. Bello*, 19 Cal.App.4th 231, 241 (1993) ("[S]ection 580 has no application to arbitration proceedings that are not governed by the formal rules of pleading.  In light of [defendant's] participation in the arbitration hearing where evidence and computation of the correct amount of [the award] was presented, the situation [was] 'more like a contested case, where a prayer that seeks the wrong relief or fails to demand adequate relief is not a serious defect,'" citing 4 B. Witkin, CAL. PROCEDURE, § 449 (3d ed. 1985)).  (See also MSJ Transcript at 3.)  The California Court of Appeal has held, moreover, that a defendant who withdraws from an arbitration forfeits the ability to contest the resulting arbitration award as exceeding that allowable in the case of a default judgment under § 580.  *Comerica Bank v. Howsam*, 208 Cal.App.4th 790, 829-30 (2012).  Thus, even if an analogue to § 580 applies in the arbitration context, Houng forfeited his right to raise the issue by committing discovery abuses that led to the imposition of terminating sanctions by the arbitrator.

and fair opportunity to participate in the arbitration proceeding before the arbitrator entered terminating sanctions due to the fact that Houng had engaged in discovery abuses.  Whether Houng breached a fiduciary duty to Tatung as a result of defalcations, moreover, was addressed in  the arbitrator's tentative draft award.  The arbitrator permitted Houng to submit written comments concerning the proposed award, and he submitted a brief responding to the tentative award.[57]  He thus had notice and an opportunity to defend on the merits whether he breached a fiduciary duty owed to Tatung by misappropriating funds while WDE was insolvent.  See *id.* ("[T]he 'actual litigation' requirement may be satisfied by substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so"). The arbitrator's final Phase II award determined that Houng breached his fiduciary duty to Tatung by misappropriating WDE funds during the company's insolvency. Consequently, the court concludes that the "actual litigation" requirement was satisfied with respect to Houng's purported breach of fiduciary duty.[58]  Because the FAAA alleged that Houng was liable as WDE's alter ego, because the issue was raised by the arbitrator's tentative draft award, because Houng had notice and an opportunity to address the issue, and because the arbitrator actually decided the issue in the course of finding that it was appropriate to impose alter ego liability on Houng, the court concludes that the arbitrator "necessarily" decided that Houng breached a fiduciary duty he owed to Tatung by misappropriating assets and property of WDE.

The court's review of the arbitrator's award indicates, moreover, that the arbitrator decided that Houng owed Tatung a fiduciary duty due to WDE's insolvency, which gave rise to an express trust.[59]  The arbitrator found that WDE was insolvent at all times during the course of the relationship between Tatung and WDE, such that Houng already owed Tatung a fiduciary duty

---

[57]Appellee's SER, Exh. 51.

[58]See *supra*, note 55.

[59]Phase II Award at 10 (discussing *CarrAmerica Realty Corp. v. nVIDIA Corp.*, No. C05-00428JW, 2006 WL 2868979, *6 (N.D. Cal. Sept. 29, 2006); *In re Jacks*, 243 B.R. 385); *id.* at 17.

1    when the debt arose.[60]  He also found that Houng engaged in defalcations by diverting assets from

2    WDE for his benefit and the benefit of his other companies.  The court concludes, therefore, that

3    the arbitrator actually decided the necessary elements of a § 523(a)(4) claim.[61]

4                    **c.    Whether the Bankruptcy Court Erred in Determining the**

5                            **Amount of Debt That Is Non-Dischargeable under § 523(a)(4)**

6           Houng next contends that the bankruptcy court erred in determining that the full amount

7    of the debt claimed in the first amended complaint was non-dischargeable under § 523(a)(4).

8    Houng notes that WDE has multiple creditors, and asserts that Tatung is entitled to recover only

9    its pro rata share of the amount he misappropriated during WDE's insolvency.  Tatung counters

10   that Houng's argument conflicts with the Supreme Court's decision in *Cohen v. de la Cruz*, 523

11   U.S. 213 (1998).  There, the Supreme Court explained that "debt for fraud" is all debt "arising

12   from" fraud, and there is no restitutionary ceiling imposed on the extent to which a debtor's

13   liability for such fraud is non-dischargeable under § 523(a).  *Id.* at 219-21.  While *Cohen* is not

14   directly on point, it does suggest that Tatung is entitled to have the full amount of its debt caused

15   by Houng's defalcations declared non-dischargeable.  The bankruptcy court adopted the

16

17           [60]Phase II Award at 10-11.

18           [61]Houng contends that § 523(a)(4) does not apply because "[§] 523(a)(4) specifically
19   excepts misrepresentations regarding a debtor's financial condition from the ambit of the statute,"
     and "Tatung's fraud claim is based upon such an alleged misrepresentation." (Appellant's Br. at
20   2.)  Houng cites no authority indicating that § 523(a)(4) does not apply to fraud in the form of a
     misrepresentation regarding the financial condition of the debtor, fiduciary, and/or trust.  Unlike
21   § 523(a)(2)(A), which expressly states that a debt "for money, property, services, or an extension,
     renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false
22   representation, or actual fraud, *other than a statement respecting the debtor's or an insider's*
23   *financial condition*," is non-dischargeable, 11 U.S.C. § 523(a)(2)(A) (emphasis added),
     § 523(a)(4) states that any debt "for fraud or defalcation while acting in a fiduciary capacity,
24   embezzlement, or larceny" is non-dischargeable, *id.*, § 523(a)(4).  Even if Houng is correct that
25   § 523(a)(4) does not apply in cases of fraud involving misrepresentations concerning the debtor's
     financial condition, moreover, Houng's breach of fiduciary duty does not fall within such an
26   exception. The arbitrator did not find that Houng engaged in fraud by misrepresenting WDE's
     financial state; he found that Houng engaged in defalcation by diverting assets from WDE for his
27   personal benefit.  Such conduct constitutes a breach of fiduciary duty within the meaning of
28   § 523(a)(4) independent of any misrepresentation regarding the debtor's financial condition.

arbitrator's finding that the full amount of the debt claimed by Tatung was caused by Houng's commission of actual fraud against Tatung and breaches of fiduciary duties owed to Tatung.[62]  The court affirms this ruling, based on the cases cited by Tatung, which hold that a claim under § 523(a)(4) is not limited to a *pro rata* share of the funds diverted where no other creditors have elected to assert non-dischargeability claims.  See *In re Moniz*, No. 09–90802–E–7, 2011 WL 9189752, *3 (Bankr. E.D. Cal. Mar. 8, 2011); *In re Millner*, No. 08–22659, 2010 WL 2757318, *5 (Bankr. W.D.N.Y. July 13, 2010).[63]

### III.  CONCLUSION

For the reasons stated, the court concludes that Houng's debt to Tatung is non-dischargeable under 11 U.S.C. § 523(a)(4).  Accordingly, the decision of the bankruptcy court is affirmed.[64]

DATED: September 11, 2013

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

---

[62]FOF, ¶ 13(f).

[63]*In re Schikore*, No. 12–10331, 2012 WL 3838167, *1 (Bankr. N.D. Cal. Sept. 4, 2012), holds that a claim under § 523(a)(4) is limited to a pro rata share of the embezzled.  The *Schikore* court made the point in conclusory dicta, and did not cite relevant authority.  Houng's reliance on the case is therefore unavailing.

[64]Although the arbitrator did not necessarily decide all of the elements required to establish a claim under 11 U.S.C. § 523(a)(2)(A), summary judgment of non-dischargeability is appropriate under § 523(a)(4).  At oral argument, Tatung stated, in response to the court's inquiry, that non-dischargeability under either § 523(a)(2)(A) *or* § 523(a)(4) was sufficient for its purposes.